## GEORGE A. FRANCE
vs.
## WILLIAM D. MUNSON

Superior Court     New Haven County     File #11904
(At Waterbury)

MEMORANDUM FILED JUNE 1, 1938.        125 Conn. 22

Michael V. Blansfield, of Waterbury; Harry M. Albert, of Waterbury, for the Plaintiff.

Summa & Summa, of Waterbury; John H. Cassidy, of Waterbury, for the Defendant.

INGLIS, J.   Upon argument of this matter, the defendant pressed three contentions.   He contended first, that the Commissioner erred in not apportioning the compensation as between the incapacity caused by the injuries sustained by the plaintiff in the accident and the incapacity caused by diabetes. Secondly, he contended that the Commissioner erred in refusing to find that the claimant refused treatment.   In the third place, his principal claim is that the Commissioner erred in concluding from the subordinate facts found that the defendant did not regularly employ less than five employees.

As regards the first contention, it seems to be admitted that the claimant at the time of his injury was a diabetic and that, before he could be operated upon, it was necessary to treat him for a period of weeks to get him sugar free.   These facts, however, do not bring the case within that provision of the statute (Gen. Stat. [1930] §5223), which is that:   "In case of aggravation of a pre-existing disease, compensation shall

be allowed only for such proportion of the disability or death due to the aggravation of such pre-existing disease as may be reasonably attributed to the injury upon which the claim is based." This was not the case of an injury aggravating a pre-existing disease. The medical testimony was unanimous to the effect that the injury had no effect on the diabetes. Rather it was the existence of the diabetes which magnified the seriousness of the injury. Accordingly, the statute quoted above had no bearing on this case. Moreover, as pointed out by the Commissioner, if the defendant were going to take any advantage of that statute, the burden was on him to establish the facts requisite to an apportionment. *Stier vs. Derby,* 119 Conn. 44, 53. That is to say, it was incumbent upon the defendant to produce evidence as to what portion of the incapacity was caused by the diabetes and what by the injury. This he utterly failed to do.

The second contention of the defendant is easily disposed of because it was a question of fact as to whether the plaintiff had refused treatment. On the conflicting testimony the Commissioner acted with reason in finding that there had been no such refusal.

The third contention of the defendant raises the question as to whether the conclusions set forth in paragraphs 7 and 8 of the Commissioner's finding, to the effect that between April and October, 1935, the defendant's employees as a group varied from two to seven and that there was no regularity in the conduct of the respondent in employing less than five employees, can stand. This requires an examination of the finding of subordinate facts set forth in the original finding and in the amplification of that finding and also a resort to the testimony to ascertain whether the findings of the subordinate facts can be justified.

The subordinate facts found by the Commissioner are, that between April and October. 1935 (the plaintiff's injuries having occurred in October 3d) there was a total of 13 different men employed by the defendant. These men were (1) the claimant, (2) Fred Haddy, (3) Joe Stevens, alias Steponaitis, (4) Wallace, (5) Wallace's helper, (6) Fred Stevens, (7) Keefer, (8) a Lithuanian whose name is unknown, (9) Bendell, (10) a man who helped Bendell, (11) John Clark, (12) a paper hanger, and (13) a painter.

It is found, and the finding cannot be successfully attacked,

that the claimant was regularly employed by the defendant as a laborer continuously from April to October, that Haddy was employed by the defendant as a painter and general handy-man from April through most of August, and that Clark was continuously employed by the defendant as a carpenter and handy-man from June to October.

As regards Joe Stevens, alias Steponaitis, it is found that during the period in question he acted as janitor and collector of rents, caring for property of the defendant located on Riverside Street, in Waterbury, and received by way of compensation five per cent of the rents collected. This finding coincides with the evidence and upon it there can be no question but that the Commissioner was justified in concluding that he was an employee of the defendant and was regularly employed.

The facts concerning Wallace and his helper as they are found by the Commissioner are that Wallace was a plumber who, from time to time, was called upon by the defendant to do plumbing work on his various properties. Upon the evidence it was undisputed (page 80 of the transcript) that "Mr. Wallace worked for Mr. Munson under agreements expressed and implied frequently throughout the year. In one case he made a contract of $94, for the job complete. On all other occasions Mr. Munson hired Mr. Wallace *as he would any plumber* for so much an hour and no special agreement price —he would do the work, send his bill and he got his money." It also appears to be undisputed that Wallace used his own tools, that he was in the general plumbing business doing work for various customers, that the defendant did not direct the work, that Wallace employed the helper who was chosen by him and under his control and pay, he charging the defendant for the work he did on a labor and material basis. The facts set forth in the last two sentences are added to the finding. Upon the facts found by the Commissioner and the facts added to the finding it seems clear that the arrangement between Wallace and the defendant was such that Wallace was contracting to produce a given result by means and methods of his own, and that the defendant had no right to direct him as to the methods to be employed to accomplish that result. Accordingly, Wallace was an independent contractor and not an employee of the defendant and the helper was a direct employee of Wallace and not of the defendant. *Tortorici vs. Moosop, Inc.,* 107 Conn. 143, 146; *Battey vs.*

Osborne, 96 id. 633; *Aisenberg vs. Adams Co., Inc.*, 95 id. 419.

It follows, that the Commissioner erred in concluding that either Wallace or his helper were employees of the defendant.

As regards the unnamed painter and paper hanger, it appears from the finding that each of them was engaged for only one small job in May. The conclusion of the Commissioner either that they were employees or that they were regularly employed was not justified.

The finding with reference to Bendell and his helper is that Bendell was a tenant in one of the properties owned by the defendant, that the roof of the garage leaked and Bendell offered to perform the labor of putting on a new roof if the defendant would furnish the materials. The work was done during September and October, 1935, Bendell being helped by a friend gratuitously. Neither Bendell nor his friend received any pay for the work from the defendant.

It does not appear that the Commissioner finally found that either Bendell or his friend were employees of the defendant. The Commissioner says in the Amplification of Finding: "It appears to the Commissioner not necessary to determine whether either or both of these men were employees of the respondent within the Act." But if he did include them in the five or more employees of the defendant he erred in so doing because neither of them was rendering services for pay. *Gibbs vs. Downs*, 94 Conn. 487.

This leaves for consideration only Fred Stevens, Keefer and the Lithuanian. The finding as regards these men is that they were all engaged for about two weeks in July for haying on the defendant's farm and that the Lithuanian stayed on for a few days in August to cut brush.

The word "regularly" in that portion of the act excepting from the act employers who regularly employ less than five employees connotes "customarily", or "as a rule."

It is apparent that these men were hired for a special occasion and that at a time quite remote from the time when the plaintiff was injured. If the period from April to October is taken as the period to which inquiry should be directed, the proportion of that time during which these men worked is so small that it could not fairly be said that they were regularly employed during the period. The same would be true even though the period were narrowed to cover only the

months of July, August, September and October, and certainly if one looks at the situation as it was on the date when the plaintiff was injured it would seem apparent that it could not in reason be said as of that date that three men who were hired for a special occasion and who terminated their services two months before and who would not be rehired or their places filled until the following July, were then regularly employed or that there was then any regularity in the defendant's employment of them. *Fisher vs. Sargent,* 117 Conn. 496; *Schneider vs. Raymond,* 103 id. 49; *Green vs. Benedict,* 102 id. 1.

On the finding of the Commissioner as corrected, therefore, it appears that the only men who were regularly employed by the defendant for a long period of time prior to the plaintiff's injury were the claimant, Fred Haddy, John Clark and Joe Stevens, alias Steponaitis. The conclusion is irresistible that at the time of the plaintiff's injury the defendant was regularly employing less than five employees and accordingly was not under Part B of the Workmen's Compensation Act.

For that reason judgment may enter sustaining the appeal, and setting aside the award.