MARY C. STIER, ADMINISTRATRIX (ESTATE OF WILLIAM STIER) *vs.* CITY OF DERBY ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 12th—decided July 27th, 1934.

*J. Warren Upson,* for the appellants (defendants Derby Gas and Electric Company *et al.*).

*William F. Healey* and *Edward S. Pomeranz,* with whom, on the brief, was *George Miske,* for the appellee (plaintiff).

*Harold K. Watrous,* with whom, on the brief, was *Daniel G. Campion,* for the appellees (defendant city of Derby *et al.*).

AVERY, J. On June 14th, 1931, William Stier, who was regularly employed by the Derby Gas and Electric Company as a street foreman and also employed by the city of Derby as a supernumerary policeman, received a telephone call while at his house from the chief of police of Derby that a man had been drowned in the Housatonic River near the power house, and to go there to render assistance. He proceeded in great haste and excitement to the plant of the Derby Gas and Electric Company, obtained an inhalator and drove rapidly in a police car to the scene of the drowning. Soon after arriving at the scene he was observed to be sick and was driven back to his home in Derby,

and died upon arrival there. Upon the ground that the excitement and extraordinary physical exertion of the decedent was a contributing cause of his death, compensation was awarded by the commissioner to the claimant, his widow, against the Derby Gas and Electric Company as his employer, and her claim for compensation against the city of Derby was dismissed. From this finding and award, an appeal was taken by the respondent, Derby Gas and Electric Company, to the Superior Court, where judgment was entered dismissing the appeal, and the respondent has appealed to this court, its claims being: First, that the deceased did not receive a personal injury arising out of and in the course of his employment; second, that he was not an employee of the Derby Gas and Electric Company at the time of the occurrence in question; and, third, that the compensation ought to be apportioned in that the decedent had a pre-existing heart condition aggravated by his employment.

The facts in detail found by the commissioner with such corrections as the appellant is entitled to are as follows: The decedent was employed by the Derby Gas and Electric Company as foreman of its street department; and was also employed by the city of Derby as a supernumerary policeman and paid by it for such time as he spent in its service. In connection with its business, the company owned an inhalator, weighing some seventy pounds, which was kept in the service building of its plant. For a period of years, it had advertised that it would provide this apparatus for public use to be called upon whenever emergencies arose requiring it. It was the only one in town and when needed to resuscitate persons overcome by gas or drowning, was loaned out by the respondent, but only when an attendant in its employ went with it. The deceased was one of the men trained in its use.

Mr. Sullivan, another employee, and himself were its most efficient operators. The deceased had a key to the building where it was kept and a telephone was installed in his home, paid for by the respondent, so that he could be called upon in an emergency. Even though he might be off duty from the street department work, he was required to be within call twenty-four hours of the day as an employee of the respondent to operate the inhalator, a duty which he was expected and obliged to perform on behalf of the Gas Company. The police department of the city of Derby had been notified, in case of accident, to communicate with employees of the company, familiar with the use of this instrument.

On June 14th, 1931, which was Sunday, at about four p. m., the decedent had just returned to his home from a ball game which he had attended with Mr. Sullivan. It was nearly time for him to go on duty as a special policeman and he wished to get ready. While at his house, he received a telephone call from the chief of police that there had been a drowning up the Housatonic River near the power house, and they wished him to go there, as they had tried to get Sullivan and had been unable to reach him. The decedent rushed out of the house to his garage, hurriedly backed his car out, and drove at a fast rate of speed to the ball park where he had left Sullivan. After finding him and another employee of the respondent, named Dempsey, they drove to the office of the Gas Company where Sullivan and Dempsey got out. The decedent then drove hurriedly to the police station where he changed to a faster car containing a siren, then returned to the Gas Company office. Sullivan and Dempsey placed the inhalator, bottles and blankets in the police car, and the decedent drove off rapidly up the river road toward the power house.

He was visibly excited over the whole affair. All the way up he drove the car as rapidly as the traffic would permit, continually using the siren. Just as the car passed the recreation swimming camp about a mile from the office of the Gas Company, he complained of a pain in his chest; and again before reaching the new dam.

When they reached the bridge at the power house a young man in a bathing suit jumped on the running board of the car and said he would show them the place of the drowning. They crossed over the bridge and went up the road about a mile. As they reached the supposed locality of the drowning, the Echo Hose Company of Shelton, which also had an inhalator, arrived just behind them. Someone called out that the place of the drowning was about one hundred and fifty feet further on, and when the decedent and his companions reached the spot located by the young man in the bathing suit, the decedent jumped out of the car, rushed around and seized the inhalator, suddenly lifted it out and started to run down one of the paths toward the river, when Sullivan called to him that the men from the Echo Hose Company had taken their machine and told him not to take the inhalator but to take the blankets and bottles. The decedent then started back up the hill toward the car. When he returned to it, he was pale and excited. He got out of the car and asked a woman in a nearby cottage for a drink of water and then walked toward an outhouse. After a few minutes Sullivan, becoming alarmed, walked to the place where he had disappeared and found the decedent leaning against the building trying to vomit, and assisted him back into the automobile. Sullivan then took the wheel and drove to Southbury and there stopped for some baking soda, which was dissolved in water and taken by the decedent who, at

this time, was complaining of pain in his chest. Sullivan became alarmed at the appearance of the decedent, noted that he was pale and that his forehead was covered with sweat. He drove him back to Derby to his home and steps were taken to obtain a doctor, but before the doctor arrived, the decedent was dead.

The commissioner found that his death was due to thrombosis or occlusion of the coronary arteries and that the excitement and unusual exertion described were contributing causes thereto and constituted an accidental injury within the meaning of the Compensation Act. He further found that at the time of receiving the injury, the decedent was in the employ of the Derby Gas and Electric Company; that the injury arose out of and in the course of the employment; and that he was not in the employ of the city of Derby.

The primary question raised on this appeal is whether the death of the decedent was the result of a personal injury received in the course of his employment and arising out of it. General Statutes, § 5223, provides: "The words 'personal injury' or 'injury,' as the same are used in this chapter shall be construed to include only accidental injury which may be definitely located as to the time when and the place where the accident occurred, and occupational disease as herein defined." There is no claim that there was any occupational disease causing death in this case, and the appellant claims that upon the finding and the undisputed evidence, the death was caused by coronary thrombosis, and that there was no evidence of an accidental injury definitely located as to time and place as required by the statute. The statute requires proof of an accidental injury which can be definitely located both as to time and place. It does not require that the time be fixed by a stopwatch or the place by a

mathematical point. The definition of the statute was adopted in 1927, and in *Galluzzo* v. *State,* 111 Conn. 188, 194, 149 Atl. 778, we pointed out that the effect of it was to put the law back where it was previous to our decision in *De la Pena* v. *Jackson Stone Co.,* 103 Conn. 93, 130 Atl. 89. Under the law as it stood before the last decision, we have held that frostbite (*Larke* v. *Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 307, 97 Atl. 320) and sunstroke (*Cunningham* v. *Donovan,* 93 Conn. 313, 316, 105 Atl. 622; *Ahern* v. *Spier,* 93 Conn. 151, 153, 105 Atl. 340) are compensable injuries when they are incurred in the course of the employment and arise out of it, although the exact moment of time or precise point of space where the injury occurred could seldom be determined. In the last case cited, the commissioner had found that in sunstroke there is either an instant of time when it may be said with practical certainty that the change has taken place or at most it is attributable to a short period of time, and we held that upon the basis of that finding the sunstroke constituted a compensable injury.

The finding shows, and the evidence amply sustains it, that the decedent, from the moment he received the call, was in a state of nervous excitement and agitation. He hurried to his garage, to the ball field, to the Gas Company premises, to the police station, then back to the Gas Company premises, to the wrong scene of the drowning, then to the proper scene. The commissioner's conclusion that he was laboring under intense excitement is amply supported by the facts appearing in the finding, which also amply supports the commissioner's conclusion of over-exertion. Aside from the strain that was placed on him by hurrying to the scene, his actions when he seized the inhalator, carried it, then replaced it in the car, could reasonably be found to be an over-exertion. The time and place

of the injury are definitely located as the interval of time and the space covered by the deceased after receipt of information of the drowning until he left the scene thereof to return to Derby.

No autopsy was had in this case, and the evidence of the physicians as to just what took place in his heart was based upon opinion from the symptoms disclosed and the testimony as to excitement and overexertion. The physicians called by the claimant testified to the effect that his activities upon the afternoon in question were a substantial factor in causing his death. The physicians called by the respondent considered that the condition of his heart was due to natural causes and in no way contributed to by the events of the afternoon. In view of this conflict in the medical testimony, the conclusion of the commissioner as to the cause of death cannot be successfully attacked on appeal. *Senzamici* v. *Waterbury Castings Co.*, 115 Conn. 446, 451, 161 Atl. 860; *Jadovich* v. *Collins Co.*, 109 Conn. 62, 66, 145 Atl. 25; *Driscoll* v. *Jewell Belting Co.*, 96 Conn. 295, 299, 114 Atl. 109.

That the decedent died from a coronary occlusion or thrombosis is found by the commissioner and not disputed. The appellant is entitled to have added to the finding so much of paragraph four of the motion to correct the finding as states that a thrombosis or an occlusion of the coronary artery means that the blood supply to the artery supplying the heart tissue with blood is shut off; that either a thrombosis or an occlusion is due to arteriosclerosis and the formation of the material inside the blood vessels which breaks loose and closes the artery, thereby cutting off the blood supply; and that the condition which makes a thrombosis or an occlusion possible takes a long while to develop. But this statement in itself carries an implication which is not justified by the facts in this case

and to it should be added the fact, to which one of the physicians called by the appellant testified, that the coronary thrombosis or forming of the blood clot is a matter of a few minutes. Death from this source if caused by unusual excitement and over-exertion is an accidental injury within the compensation law. *Richardson* v. *New Haven,* 114 Conn. 389, 391, 158 Atl. 886; *Hartz* v. *Hartford Faience Co.,* 90 Conn. 539, 543, 97 Atl. 1020; *Monk* v. *Charcoal Iron Co.,* 264 Mich. 193, 224 N. W. 354, 355; *Schroetke* v. *Jackson-Church Co.,* 193 Mich. 616, 160 N. W. 383, 386. "Whatever predisposing physical condition may exist, if the employment is the immediate occasion of the injury, it arises out of the employment because it develops within it." *Hartz* v. *Hartford Faience Co.,* supra, 539, 543; *Madden's Case,* 222 Mass. 487, 494, 111 N. E. 379.

The claim of the appellant that at the time in question the decedent was an employee of the city of Derby and not of the Derby Gas and Electric Company is not supported by the facts found. At the time the deceased was not on duty as a supernumerary policeman for the city of Derby and the court has found, and the finding is fully supported by the evidence, that he was sent on the mission in question not because he happened to be a supernumerary policeman for the city of Derby, but because he was an employee of the Derby Gas and Electric Company, having special familiarity with the use of the inhalator. The mere fact that after his death the city paid for his time while on the unsuccessful mission is not the controlling test in determining in whose employ he was at the time. The test is not the payment of wages but the right of control. *Aisenberg* v. *Adams Co.,* 95 Conn. 419, 423, 111 Atl. 591.

With respect to the claim for an apportionment (General Statutes, § 5223), the burden is upon the

respondents to establish the facts requisite to an apportionment. *Rousu* v. *Collins Co.*, 114 Conn. 24, 29, 157 Atl. 264; *Richardson* v. *New Haven*, supra, 389, 392. As we said in the *Richardson* case: An "apportionment would be impracticable . . . in the absence of a finding . . . limiting the decedent's expectation of life, by which the relative effects of the definite injury from strain and his prior physical condition upon the length of his life might be susceptible of determination." As far as appears, the respondent did not lay before the commissioner facts upon which an apportionment could be based.

There is no error.

In this opinion the other judges concurred.