## MABEL JONES *v.* TOWN OF HAMDEN ET AL.

MALTBIE, C. J., JENNINGS, ELLS, DICKENSON and INGLIS, Js.

Argued November 5—decided December 28, 1942.

*James P. Doherty,* for the appellant (plaintiff).

*Martin E. Gormley,* for the appellees (defendants).

JENNINGS, J.  Harry C. Jones was janitor of a public school in Hamden.  It was his duty to clean the side-

walks of snow. On January 27, 1941, there was a fall of light, fine, dry, powdery type of snow and by noon of that day about an inch had fallen. Jones started his work at 6:30 a.m., went home to lunch at 10:30 and returned to the school at 11. He assisted one of the teachers in the assembly room for a little over half an hour. He then resumed his work of snow removal, using a wooden pusher. From the times stated in the finding and not disputed he could not have been engaged in this work more than two or three minutes when he fell unconscious. He died in the hospital on February 6, 1941.

The cause of death as shown by the autopsy was a hemorrhage of an aneurysm in the sub-arachnoid area of the brain. An aneurysm is an out-pouching of a blood vessel having its origin in a congenitally weak spot therein which eventually may get to a size and degree of weakness so as to rupture. It usually ruptures spontaneously although various factors such as high blood pressure, arteriosclerosis or strain may be contributory factors. Many complete ruptures are preceded by a slow leakage over a period of time. It is probable that Jones had suffered such a leakage for six months prior to his death.

The commissioner concluded that Jones's death was "not due to any accidental injury which may be definitely located as to the time when, and the place where it occurred, nor to any unusual activity incidental to his said employment on January 27th, 1941, causing extraordinary excitement and physical exertion." He also concluded that Jones's death was not due to an accidental injury within the meaning of the Compensation Act, arising out of and in the course of his employment, and denied compensation. The plaintiff, Jones's dependent widow, filed a motion to correct the finding in respects designed to reverse this conclusion.

She appeals from the denial of her motion but, in its broad aspects, the ultimate question is, did the commissioner apply the correct rule of law in reaching his conclusion?

One of the plaintiff's assignments of error is the refusal of the trial court to strike out the conclusion quoted above. She claims that it indicated a requirement that Jones's death be proved to have been caused by unusual activity causing extraordinary excitement and physical exertion. The substitute proposed by her could not have been insisted on in its present form but the motion was sufficient to bring to the attention of the commissioner her claim that he was setting up too severe a standard.

The opinion in *St. John* v. *U. Piccolo & Co., Inc.*, 128 Conn. 608, 611, 25 Atl. (2d) 54, points out that our act, General Statutes, § 5226, provides for compensation for "personal injury" and is broader than those of many states which require proof of an "accident." This statement overlooked the definition of personal injury given in General Statutes, § 5223. This reads, "The words 'personal injury' or 'injury,' as the same are used in this chapter, shall be construed to include only accidental injury which may be definitely located as to the time when and the place where the accident occurred, and occupational disease as herein defined." Be that as it may, we go on to say that "Even under the acts of other states it is generally held that an internal injury that is itself sudden, unusual and unexpected is none the less accidental, because it is incurred in the course of the employee's ordinary work; and that an injury incurred by a workman while performing his work in the normal, ordinary way may be an 'accidental injury' and compensable." Ibid. See, for an extensive review of the relevant English and American cases, *Giguere* v. *Whiting Co.*,

107 Vt. 151, 177 Atl. 313. The case is particularly significant because the Vermont act, like ours, is based on the English act. Ibid; *Schmidt* v. *O. K. Baking Co.*, 90 Conn. 217, 223, 96 Atl. 963.

A finding that the rupture of an aneurysm while the employee was engaged in his ordinary work arose out of his employment has been sustained; *Hughes* v. *Clover, Clayton & Co., Ltd.*, [1909] 2 K. B. 798; as has a similar finding that cerebral hemorrhage was caused by the ordinary shoveling of snow. *Brown's Case*, 123 Me. 424, 123 Atl. 421. If the employment is the immediate occasion of the injury, the previous physical condition of the employee is immaterial. *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 543, 97 Atl. 1020; *Stier* v. *Derby*, 119 Conn. 44, 52, 174 Atl. 332.

As stated by the plaintiff in her brief, it is difficult to determine just how important this feature was in the reasoning of the commissioner. It would seem that it lay at the very threshold of the case and that he felt that the plaintiff could not recover unless she could show that Jones's injury was caused by some unusual activity. For the reasons stated, that standard would be incorrect and the trial court should have remanded the case to the commissioner for a new hearing and for a determination of the facts in accordance with the correct rule. While, technically, the finding might be supported, the plaintiff in a compensation case should be afforded an opportunity to correct the finding if there is any reasonable prospect of his being able to do so. *Cormican* v. *McMahon*, 102 Conn. 234, 238, 128 Atl. 709.

It is unnecessary to discuss the other assignments of error.

There is error, the judgment is set aside and the case is remanded with direction to return it to the

commissioner for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.