## Tafel Electric Co. v. Scherle et al.

June 11, 1943.

Robert F. Vaughan for appellant.

Edrington & Redmon for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The question is whether there was any evidence to sustain the finding of the Workmen's Compensation Board that partial paralysis, incapacitating an employee, is the direct and natural result of an industrial accident. The circuit court confirmed an award of $14.92 a week for 500 weeks, an aggregate of $7,475. There is practically no contradiction in the controlling factual evidence. The issue is whether the physicians' opinions justify the decision of cause and effect.

The appellee, Leo M. Scherle, employed by the appellant, suffered a sharp and acute pain in his right side, neck and shoulder which extended to his chest and back while helping to lift a heavy stove into a truck. This occurred about noon on Friday, September 19, 1941. He reported his condition and was sent to the company's doctor, Dr. Doughty, who found that he had a pronounced muscle strain. The doctor gave him "light treatments" and instructed him to come back the next morning. Scherle returned to work but was scarcely able to do anything during the afternoon. He went home to bed. The next morning his head was pulled over to the right side and downward and his eye was affected. He was not able to go to work but went to the doctor's office and received more "light treatments" and some liniment. On Monday he could not get out of bed. Dr. Doughty being unable to answer the call, Dr. Victor Atherton came and pronounced Scherle as having pleurisy. By Wednesday he had developed pneumonia and was taken to a hospital. Dr. Maurice Buckles, a lung specialist and surgeon, performed an operation on him on October 30th and removed an abscess from his lung, which had followed pneumonia and as a result of it. An embolus formed and lodged in the brain. Scherle was in the hospital 69 days and emerged paralyzed in both arms and practically blind. At the hearing of his claim for compensation nine months after he suffered the strain, he had improved some but had no use of his right hand and could not see to read. The employee had been a healthy, strong, able-bodied man who had not missed a day at work during the nine years of his employment by the appellant, save one week's vacation. A bookkeeper in the employer's office testified Scherle had had a cold for two weeks and was coughing quite a

bit. His superintendent had also noticed a cough and that he appeared for sometime to be in a run-down condition. Appellant points to this to show that the pleurisy may have been due to natural causes. But all this is contradicted by proof of perfect health. Scherle stated that he sometimes came in with a cough due to throat irritation when he had been servicing a refrigerator with leaking freezing gas or sulphur dioxide, but it was temporary. It is not questioned that there is abundant evidence that he was permanently and totally disabled.

The progressive development was from a severe muscle strain to pleurisy, to pneumonia, to an abscess, to embolism, to paralysis.

In defining a compensable accident, Section 4880, Kentucky Statutes, now KRS 342.005, declares that it does not include a disease except where it was the natural and direct result of a traumatic injury by accident. As stated the other day in Kentucky Stone Company v. Phillips, 294 Ky. 576, 172 S. W. (2d) 216, "All diseases, occupational or otherwise, are excluded from the operation of the act unless caused by traumatic injury." Dr. George Dwyer tells us in this record:

> "Pleurisy is an inflammation or irritation of the lining or covering, the lining of the chest wall and covering of the lung. There isn't any of us, any individual of an adult age, that hasn't got pleurisy adhesions. If you have got an ordinary head cold, that will cause the chest to adhere to the lung walls and when you get that adhesion you have it for life. I have seen thousands of post mortems and I don't recall ever seeing more than one or two in adults where the lung isn't adhering somewhere to that chest wall. The lung is an expanding organ and where it adheres to the chest wall you become accustomed to that."

If, as Dr. Dwyer further testified, pleurisy may be caused by breaking of the adhesions, the fact of their pre-existence is but a condition, and the injury must be regarded as traumatic and caused by an accident. Great Atlantic & Pacific Tea Company v. Sexton, 242 Ky. 266, 46 S. W. (2d) 87.

The appellant does not question the sufficiency of the evidence as to the causal relation of the paralysis to the pleurisy; nor that the strain was the result of

lifting the stove. The decisive question before the Board, therefore, was whether the pleurisy was the proximate result of the strain. All of the doctors agreed upon that which most everyone knows, that pneumonia, pleurisy and lung abscesses may develop without trauma. Dr. Atherton explained that Scherle may have had foci or infection in the lung which was caused to break loose. However, he declined to answer directly the question whether in his opinion the strain was the direct cause of his patient's condition. He responded:

> "It is possible, but I don't know whether it did cause it or didn't cause it. You are putting me on the spot. I am trying to give my own definite opinion on it. There is a course of events, of course, that looks very much like it did; but at the same time for me to say, 'Yes, I think that caused it' or if I said 'I don't think it caused it,' I would have no reason for knowing it."

Neither would Dr. Buckles commit himself definitely. Asked whether the pneumonia was the natural and direct result of the injury, he testified:

> "Well, I think that is a difficult thing. We know that pneumonia starts with pain very often and that sometimes there is what we call an exciting factor that precipitates pneumonia. We don't know, we can't always tell about these things. I would say this was very unusual. In my opinion it wasn't very likely there was much connection, although we can't say it was impossible that this didn't incite the pneumonia. That would be a very unusual cause of pneumonia, of course; but to say it is impossible, we can't do that. But the way I look at it, would he have developed pneumonia if he hadn't lifted the stove? I can't say whether he would or not."

Dr. Buckles adhered to that response throughout his examination, but said it was not impossible for such a result to occur and believed there would be a difference of opinion among doctors on this point. He related that pneumonia is caused by a germ which may be affected by precipitating factors or forces, and added:

"You see people who undergo unusual things, and following it they do have pneumonia, which we think must be an exciting factor."

Dr. Dwyer related the history of the case as given him by Scherle which corresponds pretty well with the evidence of it, and his findings from the hospital records and an examination of the claimant made several days before he testified. He expressed the definite opinion that Scherle's pneumonia was the result of the strain. This was based upon the progressive course of events from the moment he suffered the strain and the common or usual existence of adhesions as above described, which he testified, "go directly to the lung tissue itself."

Dr. Wilbur Helmus, who has had large experience in treating men suffering from industrial accidents, testified elaborately for the employer. He, too, related the history of the case as told him by the employee and what he found from a minute examination of the man. His testimony throughout and upon all phases is favorable to the employer. He deposed that it was impossible for any strain to have caused Scherle's condition, and testified that if it should be assumed that he had had lung adhesions, that would in itself imply an infection, but it would have been impossible for them to have been broken loose by the type of strain described.

The appellant submits that this testimony for the claimant does not satisfy the standards laid down in workmen's compensation cases with respect to the burden of proof and quality of evidence. Omitting a review of our opinions of a general nature, we may note two which are especially relied upon.

In American Rolling Mill Company v. Pack, 278 Ky. 175, 128 S. W. (2d) 187, we undertook to define the quality of evidence sufficient to support a finding of fact by the Board. Stated in other language, it was declared that the testimony must have enough substance and relevancy to establish the consequence claimed; that it must do more than create only a suspicion of the existence of a fact, and must be of the character and quality that will afford a reasonable conclusion of cause and effect. In that case the employee had tuberculosis and sought to establish that it was caused by irritation of his lungs through inhaling noxious gases while working in a steel mill. The Board had found the disease

pre-existed his employment, but attributed two-thirds of his disability to the aggravation of the gases. The case was really one of occupational disease within the provisions of the statute covering the effect of inhaling gas and not an accident. The limit of any doctor's testimony was that the irritation and inflammation caused by breathing the gases over a long period of years made the ground fertile for the tuberculosis germ and that this might have caused the employee's tubercular condition. None of them testified that in his opinion it did cause it. There was evidence of the workman having suffered with influenza months after he had quit work and that several employees who had worked alongside Pack, from $4\frac{1}{2}$ to 18 years, had never suffered any ill effect from the gases or fumes. We held the evidence under the rule stated not sufficient to constitute any substantial, competent evidence, which, from the beginning, has been required for the support of a finding of fact by the Compensation Board to make it conclusive upon the courts.

In the case of George T. Stagg Company v. O'Nan, 286 Ky. 527, 151 S. W. (2d) 51, an employee had twisted his wrist and struck his elbow in catching a guard rail in order to prevent a fall. He asserted no claim for compensation for several months after he lost his job and then accepted a small sum in settlement. More than two years after his accident he sought to re-open his case because of a changed condition. At that time it appeared that he had a bony or calcium formation along the elbow joint which partially disabled him. This condition had been disclosed by an X-ray nine days after the minor injury had been suffered. The testimony of five doctors was to the effect that such a condition is one of long growth or slow development and is usually caused by a venereal disease with which the employee had suffered for 10 or 12 years, or perhaps longer. Two of the doctors stated that trauma could cause it but it certainly had not in that case. One doctor expressed the opinion that the condition "might have had" its origin in the twist of the wrist. That was all the testimony there was on the point, and we held it to be no more than an opinion of possibility, having no probative value.

The facts in the case at bar are materially different from either of the above. The testimony of Drs. Ath-

·erton and Buckles, who would not hazard a positive, definite opinion of this very unusual condition, has some value in establishing a causal relation. Dr. Dwyer supported his definite opinion that the accident was the proximate cause of the condition by detailing his reasons. As observed in Fordson Coal Company v. Bledsoe, 236 Ky. 409, 33 S. W. (2d) 302, 304:

> "The evidence of these doctors is based on the examination of the patient and their professional experience and learning. The statements are given as a diagnosis consisting of fact and opinion."

Another difference of great importance is that for years before this accident, the employee had suffered no sort of pre-existing disease or contributory condition or disability of any kind. The disability in this case is traced directly, step by step, in quick and logical sequence, back to a definite accident occurring at a definite time and place. The beginning and the end are connected. There is a course of events, neither incredible nor illogical. This progressive development and connection can hardly be attributed to coincidence. The question is resolved into whether the testimony of professional diagnosis and opinion and of all the circumstances is too vague, uncertain, speculative, or unreasonable to permit a logical, judicial conclusion that the claimant's paralytic condition had its origin in the accident. We are of opinion that the finding of the Board, confirmed by the Circuit Court, that it did is supported by the evidence.

The judgment is affirmed.