## Hinkle v. Allen-Codell Co.

June 2, 1944.

Frank R. Cahill, Jr., and Herbert H. Monsky for appellant.

Jouett & Metcalf for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee, Allen-Codell Company, is a corporation organized some four years ago as a subsidiary of another corporation known as the Codell Construction Company. The latter company has for many years been engaged in the business of constructing highways under contracts obtained from public authorities ordering them.

About four years ago it organized the appellee as a subsidiary corporation to furnish labor and material in surfacing highways previously constructed by others. Prior to August 10, 1941, it had obtained a contract for surfacing with asphalt a publicly constructed highway, or a part thereof, located in Johnson County, the work to commence at a point about seven miles from Paintsville, in which city appellee had procured to be placed on a railroad sidetrack cars containing the material to be put upon the highway. It was requisite for it to be hauled by truck from the sidetrack at Paintsville to the place on the highway where it was to be spread, and under appellee's contract its spreading work was to commence on the morning of August 11, 1941. The location of appellee's headquarters and the storage building for its trucks were in the town of Winchester, something over 100 miles from Paintsville.

Appellee had in its employ a faithful and industrious, as well as loyal, servant by the name of James Hinkle, the husband of appellant, Matilda Hinkle. The home of the couple was in Louisville, Kentucky, but the husband (appellee's servant) had worked for it, and the corporation of which it was a subsidiary, for as much as twelve years, and according to the proof he had given entire satisfaction. He received as compensation for his services under his parol contract of employment a weekly wage payable at the end of each week, but there was nothing in the contract according to the undisputed proof limiting the days upon which Hinkle should work for his employer, nor anything forbidding him working on Sunday.

August 10 of the referred to year was Sunday, and a short time before that Hinkle was instructed by

appellee's superintendent to prepare and be ready with his truck and the material that was to be spread on the highway, to commence the work on Monday morning, August 11. In order to be at that place (which, as we have seen, is 100 miles distant from Winchester) he started with his truck on Sunday, the 10th of that month, and when he had traveled possibly one-half the distance his truck for some reason ran off the highway into a ditch and turned over, resulting in his death. Appellant, as his widow and sole dependent, made application to the Compensation Board for an allowance under its terms, but appellee contested her right thereto on the ground that the accident resulting in the death of Hinkle did not "arise out of and in the course of his employment." Proof was taken, and stipulations were filed, and the cause was submitted to a referee of the Board who sustained the defense interposed by the employer and dismissed the application. A Full Board hearing was later had pursuant to the statute and it agreed with the referee and entered an order accordingly. The applicant then filed this action in the Clark circuit court for a review accompanying it with the record made before the Board, including the evidence heard and stipulations entered into, when the cause was submitted to the court, followed by its conclusion that the orders of the referee and of the Full Board were each correct, and the petition was dismissed from which appellant prosecutes this appeal.

It was stipulated "that the character of decedent's work in which he was engaged when he met his death was in the furtherance of the employer's business, and the work was such that had the accident occurred on Monday it would have been conceded that it arose out of and in the course of his employment. It is agreed that the trip taken on Sunday was not the personal affair of Hinkle, but was done in furtherance of the Allen-Codell Company's business." It was further stipulated that decedent was traveling on his way from the warehouse of appellee in Winchester to the railroad siding about 100 miles distant, "and the siding on which the asphalt was located was the place where he had been instructed to load that particular truck."

Appellant took the depositions of James B. Allen, superintendent of appellee, whose testimony confirmed the facts hereinbefore stated and confirmed the stipulation referred to. He also testified that decedent when

not engaged in truck driving worked in the shop repairing trucks and that on the Saturday before he was killed the following Sunday, he was engaged in such repair work. He was asked and answered:

"Q. If there was repair work to be done, or a truck to be serviced to go out the next morning, he would work nights, wouldn't he? A. Yes sir.

"Q. If there was work to be done on a truck that was in some way disabled, on the weekend, he would do it, or do some work on Sunday, wouldn't he? A. Yes sir.

"Q. And had done that down through the years frequently? A. Yes sir, he had done that frequently.

"Q. As superintendent of this Company, you did know about it and desire for that truck to be in Paintsville on Monday morning loaded with oil and ready to go to work, didn't you? A. Yes sir."

He then stated that he was the one who directed Hinkle "to report on Monday morning at Paintsville." He was then asked and answered:

"Q. In taking that truck, is it true and known to you that he left here on Sunday with the truck and went over to get some oil (asphalt), I believe, is that true? A. Yes that is true.

"Q. And you told him to go to Van Lear or to this railroad siding to get the asphalt, to go over there and get the truck loaded and report to Paintsville on Monday morning? A. Yes sir. * * * Beginning Monday morning I told him to have the distributor there on Monday morning.

"Q. There was no dissatisfaction or objection on your part to his leaving here on Sunday, was there, and that would have been quite consistent with the way he had carried out his orders in the past, wouldn't it? A. Yes sir.

"Q. And by reason of the fact that he was one of your regular truck drivers and had frequently been given charge of the truck to go away over the week ends on other times on jobs, you left it up to his best judgment as to when he left here and when he picked up the asphalt, in order to arrive at Paintsville on Monday morning? A. Yes, we told him we wanted it Monday morning.

"Q. I mean, from his reliability, which had been shown over a number of years, you left it to his judgment as to what time he left here and what time he picked up the asphalt, just so he got it there on Monday morning? A. Yes sir.

"Q. When he concluded to leave here Sunday morning, there was nothing contrary to usual practice in his doing that, was there? A. No sir.

"Q. There was no specification that he work six days or didn't work Sundays, was there? A. No.

"Q. In fact, not only on this particular Sunday, but on other Sundays that you know of, he did perform services for your Company? A. Yes sir."

It thus appears (and which the witness, Allen, confirmed) that the employment of Hinkle by appellee specified no days of the week upon which the latter was to serve his master throughout the period of that relationship between them. On the contrary, it indisputably appears that such service might be rendered on any of the seven days of the week and which was done throughout the period of decedent's employment, and the services rendered on Sunday were not forbidden or objected to but acquiesced in and accepted by the employer, thus clearly showing that the contract of employment of decedent by the week embraced services rendered in the line of performing his duties to his master though performed on Sunday, unless expressly forbidden by his employer, but which as we have seen, was not done in this case.

It will therefore be seen that the only defense is, that decedent was serving his master at the time he was killed in a manner to entitle his dependent to compensation if the fatal day had been any other day than Sunday; but the argument is made that the relationship of master and servant became suspended at the end of the week on Saturday preceding his accidental death the next day and reattached the following morning, thus excluding the intervening fatal Sunday.

The case presents only a question of law as based on the indisputed facts we have related. Therefore, the requirement of the statute that the findings of fact by the Compensation Board will not be disturbed by the courts if there is any evidence of convincing force to uphold them has no place in this record, and if the

tribunals below base their conclusions upon any such principle it was clearly erroneous. The statutory requirement to which we have referred relating to the finding of facts by the Board does not apply to the application of the law to undisputed facts. See Turner Day & Woolworth Handle Co. v. Pennington, 250 Ky, 433, 63 S.W. 2d 490, 491; Three Rivers Oil Corporation v. Harper, 258 Ky. 253, 79 S.W. 2d 972, and cases cited in those opinions. Our task therefore is to apply the applicable law to the undisputed facts in the case.

Learned counsel for appellee in support of their contention that Hinkle's death did not arise out of and in the course of his employment because he was serving his master on Sunday rely on the domestic cases of Consolidated Coal Co. v. Ratliff, 217 Ky. 103, 288 S.W. 1057, and W. T. Congleton Co. v. Bradley, 259 Ky. 127, 81 S.W. 2d 912, 913. But the facts of those cases are easily distinguishable from the facts of the instant one. In the Ratliff case the applicant for compensation was a coal digger in the mine of his employer. While it does not appear as to how his compensation was measured, we know the general custom to be that such employees are paid by the quantity of coal they extract from the mine. His employment was expressly limited to work in the daytime and that he had no right to engage in such work in the night-time without an express permission from his employer. In violation of that rule he went into the mine at night without the knowledge or consent of his employer and sustained his injuries while working in such forbidden services and it was upon that ground alone that compensation was disallowed. There existed no such rule against Hinkle working on Sunday by his employer, but on the contrary he frequently did so with the connivance, approval and acceptance of his service on Sunday without complaint, since according to the testimony he himself chose the time when he would serve his master within the general field of his labors.

In the Bradley case he and one Jackson were co-employees of the same master. Jackson owned and possessed a truck in which he traveled from his abode to and from his place of work. They were each paid by the hours of service they rendered. Jackson for the accommodation of Bradley permitted the latter to ride in his truck in going to and from his home where they were to begin their respective service after ar-

riving at the employer's plant. In denying compensation because Bradley's injury did not occur in the course of or arise out of his employment we said:

"When Jackson was employed, nothing was said to him about transporting these men. Bradley does not claim he was promised transportation when he was employed. * * * Jackson allowed these men to ride on his truck as a matter of accommodation. When quitting time came the day before this accident, the relationship of master and servant between Congleton and Bradley ceased or became suspended, whichever way you may want to look at it, and as this accident happened before Bradley reported for work the next day, it was never resumed."

In the instant case there was no such suspension of the relationship of master and servant, since as pointed out the evidence clearly shows that by acquiescence and approval of the master Hinkle was permitted to and did serve his master upon each and all of the seven days of the week whensoever he saw proper to do so in furtherance of his master's business, especially in the preparation for service to be performed on week days. Therefore, all of the service that he performed under his contract of employment on any of the seven days of the week were rendered for the benefit of his master, and any accidental injury he sustained while so serving his master became one "arising out of and in the course of his employment," so as to be compensable under our statute.

We are not without substantial judicial authority for such conclusion. In the case of Grieb v. Hammerle, 222 N.Y. 382, 118 N.E. 805, 806, 7 A.L.R. 1075, almost the exact question was presented to the New York Court of Appeals arising from substantially similar facts, and the same defense was interposed by the employer to defeat compensation under the statute of that state. The opinion was written by the late Justice Cardozo of the Supreme Court, who was then a member of the New York Court of Appeals. In the course of the opinion he wrote: "That in determining the relation of the employer and employe, the payment of wages is not the sole test." The judgment appealed from allowed compensation which the New York court speaking through Judge Cardozo affirmed. In doing so he wrote:

"The argument is made that the injury did not arise out of or in the course of the servant's employment. I think that is too narrow a view. If Grieb had been injured during working hours, it would make no difference that his service was gratuitous. * * *. Any other ruling would discourage helpful loyalty. Hartz v. Hartford Finance Co., 90 Conn. 539, 97 A. 1020. * * *. Pro hac vice, by force of custom or request, the employment is enlarged. Lane v. Lusty [1915], 2 K.B. 230 [(1915) W. N. 252, 84 L.J.K.B.N.S. 1342, 113 L.T.N.S. 615, 8 B.W.C.C. 518]; Mann v. Glastonbury Knitting Co., 90 Conn. 116, 96 A. 368, L.R.A. 1916D, 86. We have already held that in determining the relation of employer and employe, the payment of wages is not the sole test. De Noyer v. Cavanaugh, 221 N.Y. 273, 116 N. E. 992. We should hold the same thing now.

"It is plain, therefore, that Grieb's service, if it had been rendered during working hours, would have been incidental to his employment. To overturn this award, it is necessary to hold that the service ceased to be incidental because rendered after hours. That will never do. *The law does not insist that an employe should work with his eye upon the clock.* Services rendered in a spirit of helpful loyalty, after closing time has come, have the same protection as the services of the drone or the laggard. Larke v. John Hancock [Mut. L. Ins.] Co., 90 Conn. 303, 308, 97 A. 320, L.R.A. 1916E, 584, * * *." (Our emphasis).

A similar question was presented in the case of Frint Motor Car Co. v. Industrial Commission of Wisconsin et al., 168 Wis. 436, 170 N.W. 285, 286. In affirming the lower court's judgment allowing compensation the court said, inter alia:

"The fact that the work was being done on Sunday did not abrogate the relation of master and servant between appellant and Healey. [Citing cases]. And this court has held that, although the employment contract be illegal, it does not destroy operation under the Workmen's Compensation Act." [Citing cases].

It was also said in that opinion that "the fact that Healey was violating the Sunday law cannot defeat recovery, because it did not contribute to the injury." It was not insisted in that case the employment, if it did embrace Sunday, would defeat compensation because

the contract was in violation of the statutory provisions against performing that character of labor on Sunday, but it was also insisted that the servant was working on that holiday without the consent or approval of his employer, but which under the facts the court concluded otherwise.

The Supreme Court of the United States was presented with substantially the same question in the case of Voehl v. Indemnity Insurance Co. of North America, 288 U. S. 162, 53 S. Ct. 380, 382, 77 L. Ed. 676, 87 A.L.R. 245. In that case the injured servant was injured while traveling in his automobile to his employer's warehouse on Sunday. It was contended by his employer that the trip was being made for the sole purpose and benefit of the servant "to obtain ashes to place in front of his house," but the evidence showed that the company did not object to its employees taking ashes although their removal was not a part of Voehl's work. However, in stating the facts the court said: "the purpose of his Sunday trip was to remove an unusual accumulation of trash, which it was his duty to remove, and that under his orders it was necessary for him to do this on Sunday in order that the building might be in proper condition on the following morning." The court then recites the general rule to be that the servant is not entitled to compensation when injured in going to and from his place of work, unless the statute or the contract of employment so prescribes, and then says: "But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' [Citing cases]." In stating the question for determination the court said:

"The precise issue, whether the injury arose out of and in the course of the employment, turned on the general nature and scope of the employee's duties, the particular instructions he had received, and the practice which obtained as to work in extra hours or on Sundays, and the purpose of the journey in which he was injured. * * *"

"Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agree-

ment to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act."

The disallowance of compensation made by the United States Court of Appeals, Indemnity Ins. Co. of North America v. Hoage, 61 App. D.C. 173, 58 F. 2d 1074, was reversed, and that of the Supreme Court of the District of Columbia allowing compensation was affirmed.

It should also be remembered that compensation statutes are to be liberally construed to accomplish the purpose of their enactment which is nothing less than a direction to courts that if there is any doubt as to a servant's right to receive compensation under the terms of the statute such doubt should be resolved in his favor. We entertain no doubt under the facts of this case that the applicant's claim should have been allowed, but under the stated rule were we less convinced it would then be our duty to resolve our doubts in favor of the employee.

Wherefore, the judgment is reversed with directions to refer the case to the Kentucky Board of Compensation with directions to it to enter an order allowing compensation to the dependent appellant according to the provisions made in the statute.