## Rue v. Kentucky Stone Co.

June 13, 1950.

Rehearing Denied October 20, 1950.

W. J. Baxter, Judge.

E. C. Hammonds for appellant.

James M. Graves and Julian Knippenberg, for appellee.

CHIEF JUSTICE SIMS—Affirming.

This appeal is prosecuted from a judgment of the Jessamine Circuit Court which dismissed th epetition of Charles W. Rue, hereinafter referred to as plaintiff, wherein he sought a review of the order of the Workmen's Compensation Board, hereinafter referred to as the Board, refusing to make an award in his favor. It is practically admitted that plaintiff is permanently and totally disabled, but the Kentucky Stone Company, hereinafter referred to as defendant, insists his disability is the result of a pre-existing heart condition, while plaintiff contends it is the result of an accidental traumatic injury received in the course of his employment, or at least the accident "lighted up" and precipitated the heart condition which disabled him.

Defendant operated a stone quarry at High Bridge, Kentucky, and plaintiff, who was 58 years of age, had worked for it approximately 25 years. The quarry is quite deep in the ground and the stone is brought up a tramway 600 or 800 feet on small, "dinky" cars from which it is dumped into a crusher. The cars are brought up the tramway and lowered back into the quarry by means of a cable operated by an electric hoist which is controlled by levers located in a small room adjacent to the crusher. Plaintiff's job was operating these levers. He testified that to expedite the lowering of the cars back into the quarry, he would let them run rapidly down the incline on their own momentum until they got about half way to the bottom, when he would pull a lever to apply a brake drum which stopped the car at the end of the incline.

Plaintiff testified, as did George Anderson, who operated the hoist in plaintiff's absence, that it was no "baby's job" to apply the brake lever but that an

ordinarily stout man could do it. It was further testified by plaintiff that about 3 o'clock on the afternoon of Dec. 19, 1946, one of the empty cars, weighing between two and three tons, returning to the quarry "got a start on me" and "I applied all the energy in me in stopping it." Then he pulled the switch to bring a loaded car up the incline and after it got about 200 feet up "my right eye turned dark, I staggered over the line and stopped the car and two fellows got hold of me." He was then taken home and has not been able to work since that date. Plaintiff received no lick or fall and his only claim that he suffered an accident is he had this heart attack after exerting himself in vigorously applying the lever to stop the empty car.

In the previous July, plaintiff had a similar heart attack while picking up pieces of concrete another workman was breaking with a sledge hammer. Plaintiff's family physician, Dr. V. C. Gillespie, testified he attended plaintiff after each attack and described the two as quite similar except the second was a more pronounced coronary occlusion. He would not let plaintiff return to work for a couple of weeks after the first attack and did not let him return to work at all after the second attack. Dr. Gillespie had never known of plaintiff having a heart attack until the one which occurred in July 1946. Plaintiff's blood pressure in July was 180/90 and the doctor testified a coronary occlusion could be set off by over exertion or plaintiff "could have had it with light exertion."

Dr. Morris Weiss, a heart specialist of Louisville, testified for defendant. He examined plaintiff on Feb. 19, 1947, and found "the healing signs of a coronary arterial occlusion" and plaintiff's blood pressure was 120/80, as it goes down after an occlusion. Plaintiff's heart was enlarged and the doctor testified high blood pressure over a period of time will cause such an enlargement. He further stated high blood pressure often causes hardening of the arteries and the two together could cause a coronary occlusion. Dr. Weiss did not think plaintiff's employment was responsible for his heart condition, nor was that condition the result of trauma. He said the first attack made the second more likely or easier to follow, and a sudden strain, shock, good news or bad news, may precipitate an occlusion,

and the attack may occur a week after a shock or an exertion. The doctor stated some specialists think a strain is "merely a coincidence and has nothing to do with the formation of the coronary thrombosis." He did not think plaintiff's occupation precipitated his heart attack.

There is practically no conflict between the testimony of Dr. Gillespie and that of Dr. Weiss, and from the testimony of these two doctors it is manifest there was substantial evidence before the Board to sustain its finding that plaintiff's disability is the result of pre-existing heart disease and was not caused by an accident. In the absence of fraud or mistake, a finding of fact by the Board is conclusive and will not be disturbed by the courts if supported by any competent evidence of probative value. The cases are so numerous on the subject that instead of citing any of them we make reference to Key 1939 under Workmen's Compensation in 19 Ky. Digest.

Plaintiff admits that under KRS 342.005 he is not entitled to compensation for his disability unless his condition is the result of an accident and that he cannot recover for a disability caused by a pre-existing disease, except where the disease is the natural and direct consequence of an accident. But he insists that his coronary occlusion was an internal traumatic injury and was the result of plaintiff straining against the brake lever in stopping the car, citing, Tafel Electric Co. v. Scherle, 295 Ky. 99, 173 S.W.2d 810, and Great Atlantic & Pacific Tea Co. v. Sexton, 242 Ky. 266, 46 S.W.2d 87. In the Scherle case there was a direct connection between appellee's muscular strain and his paralysis. It was there written, "The progressive development was from a severe muscle strain to pleurisy, to pneumonia, to an abscess, to embolism, to paralysis." (295 Ky. 99, 173 S.W.2d 811.) In the instant case the testimony shows no connection between the heart attack and plaintiff's application of the brake to the car. In the Sexton case there was a direct connection between the disease of tularaemia and the slight cut on Sexton's hand while dressing rabbits, and we held the tularaemia was the natural and direct result of an accident Sexton sustained in the course of his employment.

Plaintiff further claims that his heart condition was

dormant and was "lighted up," accelerated or aggravated by his "accident," and under Robinson-Pettet Co. v. Workmen's Compensation Board, 201 Ky. 719, 258 S.W. 318, he should be compensated for that part of his disability which arose from his "accident." That opinion does hold that where one has a pre-existing disease which is dormant and an accident "lighted up" or accelerated it, the employee should receive compensation to the extent that his disability is due to the accident. But in the case at bar there was no accident to "light up" or accelerate plaintiff's pre-existing heart disease, therefore the Robinson-Pettet case has no application here.

The instant case is like Fannin v. American Rolling Mill Co., 284, Ky. 188, 144 S. W. 2d 228 and Wallins Creek Collieries Co. v. Williams, 211 Ky. 200, 277 S.W. 234. Fannin fell dead from a heart attack while at work and we affirmed the finding of the Board that death was due solely to pre-existing heart disease and was not the result of an accident. Williams was assisting a blacksmith in shoeing a wild mule. Immediately afterwards he complained of being sick and died that night of a heart attack. We reversed the judgment of the circuit court upholding an award of the Board since there was no evidence of a traumatic injury but all the proof showed death was due to pre-existing heart disease.

For the reasons given the judgment is affirmed.