16587

MALPHRUS v. STATE COMMISSION OF FORESTRY & WORKMEN'S COMPENSATION FUND

(69 S. E. (2d) 70)

*Messrs. T. C. Callison, Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, *for Appellants,* cite:

*Mr. D. N. Rivers,* of Ridgeland, *for Respondent.* cites:

February 4, 1952.

BAKER, Chief Justice.

On May 30, 1949, C. R. Malphrus was employed by the South Carolina State Commission of Forestry, and was killed in an automobile accident on a highway in Jasper County at the intersection of Highways, S-27 and 336, about two hundred yards out from town limits of Ridgeland, to the west.

A claim for death benefits was filed with the South Carolina Industrial Commission by Mrs. Mamie W. Malphrus, widow of the deceased. At a hearing before the single Commissioner, the defendants-appellants denied that the accident which resulted in the death of Mr. Malphrus arose out of and in the course of his employment with the Forestry Commission.

On July 29, 1950, the hearing Commissioner filed his award or report sustaining the contention of the appellants, and ordered the claim dismissed.

On review by the full Commission, a majority of that body, on February 26, 1951, reversed the award or finding

of the hearing Commissioner, and ordered payment of death benefits; and on appeal to the Court of Common Pleas for Jasper County, that Court affirmed the award of the full Commission.

The first issue necessary to be decided by this Court is whether there is any competent testimony reasonably tending to sustain the conclusion of the full Commission that the deceased's death arose out of and in the course of his employment. If so, then the award of the full Commission must be upheld and of course the order of the Circuit Court sustaining same, affirmed. For this postulate, citation of authority is unnecessary, but we will quote from *Rudd v. Fairforest Finishing Co.*, 189 S. C. 188, 191, 192, 200 S. E. 727, 728: "It is a familiar formula that findings of fact by a Board or Commission on a claim under a Workmen's Compensation Act are conclusive; and the appellate court will not review such findings except to determine whether there is any evidence to support the award. It may reverse an award if there is an absence of any evidence to support it, but it is not a trier of facts. If the facts proved are capable as a matter of law of sustaining the inferences of fact drawn from them by the Board, its findings are conclusive in the absence of fraud, and neither this Court nor the Court of Common Pleas is at liberty to interfere with them. This is but an application to Workmen's Compensation cases of the fundamental principle universal in Courts of law, that whether there is any competent evidence is for the Court to determine, but whether the evidence is sufficient is a question for the jury; the function of the Commission being in that respect that of a jury in actions of law. While the findings of fact by the Industrial Commission will be upheld if there is any evidence on which it can rest, it must be founded on evidence, and cannot rest on surmise, conjecture or speculation. *Philips v. Dixie Stores, Inc., et al.*, 186 S. C. 374, 195 S. E. 646; *Murdaugh v. Robert Lee Const. Co.*, 185 S. C. 497, 194 S. E. 447; *Spearman v. F. S. Royster Guano Co.*, 188 S. C. 393, 199 S. E. 530."

The foregoing statement of the law from the *Rudd case* has been quoted either partially or in full time and again since that opinion was filed.

The Forestry Commission maintained independent telephone lines to those of the lines of the telephone company operating in that section, but on occasions also used the facilities of the telephone company when lines of the Commission were out of order, and for connection with phones of the telephone company. Mr. Malphrus had been working on the Commission's telephone line on Friday, May 27th, but did not do any work thereon on Monday, May 30th, the date of the accident. While it was not customary for Mr. Malphrus to call his immediate supervisor about the work of the Commission in the late afternoon and at night, yet he occasionally did so, and if the telephone line to his home (the line of the Commission) was out of order between Ridgeland and his home or his telephone was out of order, it was necessary for him to go to Ridgeland and telephone from there. On Monday, May 30th, it was rainy and there had been an electric storm. Following electrical storms the line to the home of Mr. Malphrus was usually, if not always, out of order, and he would have to find the trouble, such as limbs on the wires, and eliminate it, or go to Ridgeland to phone. Mr. Malphrus was on duty all the time, and when there was a "minor interference, a ground or limb interference or something like that" he would work on the line when his immediate supervisor was not around to supervise the job. He was a fire warden—his first duty being fire protection, but he had other duties along the line of personally contacting the people in his district, and to perform the duties of a telephone linesman, to maintain or construct, whichever had to be done. On the afternoon of the accident, a daughter of Mr. Malphrus twice undertook to phone him from Ridgeland at his home, and was unable to get an answer, although her mother (the claimant) was at home and testified that the phone did not ring at any time. Just prior to Mr. Malphrus leaving home to make the trip on which he was killed,

he stated to his wife, "I am going to make a call and (will be) back in a few minutes," and that the call was to Mr. Veigneur, his direct superior. When Mr. Malphrus was killed he was travelling the direct road from his home to Ridgeland, where it was necessary for him to go in order to telephone to Mr. Veigneur if the Forestry Commission line leading to his home or his telephone was out of order. Following a storm, it was customary for Mr. Malphrus to get in communication with Mr. Veigneur, and he would go to the central office (telephone exchange) in Ridgeland and call from there as the Forestry Commission line to his home would be out of order, although on occasions the trouble with his phone or the line would later clear itself. There is testimony that the line to Mr. Malphrus' home could have been out of order without other portions of the line being greatly affected. Mr. Veigneur testified that the Forestry line to his home was not out of order on May 30th, but that he could not say as to the line to or the phone in the home of Mr. Malphrus; that if the line to Mr. Malphrus' house was grounded out, it would have affected the entire Forestry line, and he could not have been reached by phone. He did not know of any reason why Mr. Malphrus would have been calling him that afternoon, but if he was going to Ridgeland to call him in reference to the work he was doing under him, it would be in the course of his employment according to his belief. There was no work done on the Forestry line of communication on the day following the accident. There is no suggestion in the record for which there is any basis that Mr. Malphrus would have desired to talk to Mr. Veigneur about anything other than the business of the Forestry Commission.

It was the position of appellants that Mr. Malphrus was not going to Ridgeland for the purpose of phoning to his immediate superior about his work (or anything else), but was going there in order to drive his daughter, who worked in a restaurant in Ridgeland, and lived with him, home, as to which there was some testimony, though weak.

We have briefly summarized the testimony upon which the claimant-respondent relies to sustain the conclusion reached by the majority of the Industrial Commission, which was affirmed in the Court below. All of the testimony which we have set out herein is conceded to be competent or admissible, including the statement of Mr. Malphrus to his wife when he was leaving home as to his purpose in going to Ridgeland, in the light of the holding of this Court in *Ervin v. Myrtle Grove Plantation,* 206 S. C. 41, 32 S. E. (2d) 877, 878. In that case it was further held: "It is well settled that the limit of the inquiry which this Court is permitted to make 'is whether there is any competent testimony reasonably tending to support the finding of fact by the Commission and that the sufficiency of the evidence is for the Industrial Commission, but, of course, any finding of fact by the Commission must be founded on evidence, and cannot rest on surmise, conjecture or speculation' ", citing *Smith v. Southern Builders,* 202 S. C. 88, 24 S. E. (2d) 109, 111.

While the facts in this case supporting the claimant-respondent's contention that the death of the decedent arose out of and in the course of his employment with the South Carolina State Commission of Forestry are not near so strong as the facts in *Ervin v. Myrtle Grove Plantation, supra,* yet it must be taken into consideration that the deceased met his death soon after he left his home—about one-half mile therefrom—and prior to his reaching Ridgeland where he had said he was going in order to get in telephonic communication with the man under whom he worked.

We think that the testimony in this case reasonably tends to support, (1) that either the Forestry line or the telephone in the home of Mr. Malphrus was out of order and could not be used in the late afternoon of May 30th due to the electrical storm in that area, (2) that following such electrical storms this phone was usually if not always out of order, making it necessary for Mr. Malphrus to go into Ridgeland to the telephone exchange so as to

communicate with his immediate superior, Mr. Veigneur, and that it was customary for him to do so following electrical storms and rains, (3) that Mr. Malphrus left his home on the afternoon of May 30th to go into Ridgeland for the purpose of calling and talking to Mr. Veigneur concerning business of the Forestry Commission, there being a complete absence of any testimony that Mr. Malphrus had ever called Mr. Veigneur on the telephone except on the business of his employment, and (4) the overall holding of the Industrial Commission that at the time Mr. Malphrus met his death, he was engaged in the performance of his duties as an employee of the Forestry Commission, that is, the injury resulting in his death arose out of and in the course of his employment.

The second issue involved is whether an award of the Industrial Commission can be sustained where competent testimony in behalf of the appellants has been disregarded. The testimony referred to is that of the appellants' witnesses, Mrs. Margaret Gulledge and C. W. Woods.

Mrs. Gulledge is the chief operator at the telephone office in Ridgeland, and has supervision of the records of that office relating to calls made through the office. She produced two tickets for long distance calls presumed to have been made from the Malphrus residence at 10:45 and 10:52 o'clock on the night of May 30th. These tickets did not show who made the calls, but have "Malphrus" on them, and also "Tel. No. 105 F 4," and were charged to telephone 104 F 2, because this was the only telephone on the Forestry line to which long distance calls could be charged. The telephone number of the Malphrus phone is 105 F 4. She was not on duty that night, and the calls were handled by other operators. The records of these calls from which the witness was testifying were from records received from Southern Pines. In the light of the testimony in this case that on occasions trouble on the Forestry line would of itself clear up, and that the witness knew nothing of her own knowledge, not being on duty that night, it

was not of great weight, that is, sufficient to have caused a finding contrary to the finding made by the full Commission. We do not think the failure of the Industrial Commission to consider the testimony of Mrs. Gulledge would warrant this Court in reversing the lower Court in affirming the award of a majority of the Commission when there is sufficient testimony in the record which tends to reasonably support their finding of fact, and when such testimony was offered and received in rebuttal to the testimony of the respondent that about four hours before, the Malphrus telephone could not be used.

The appellants undertook to directly impeach the testimony of their witness C. W. Woods given at the hearing by introducing in evidence a statement signed by this witness sometime prior to the hearing. The statement was tentatively admitted in evidence. The full Commission very properly refused to consider this written statement, and the testimony of this witness was not damaging to respondent's cause. Appellants were permitted to cross-examine this witness for the reason that they claimed surprise, and that the witness was hostile, but they could not go to the extent of impeaching his testimony, he being their witness.

While the majority of the full Commission did hold that the testimony of these witnesses was of such a nature that it should not be considered, they also held that the two statements—evidently the tickets for long distance calls showing they were made presumably from the Malphrus phone on the night of May 30th, but of which the witness, Mrs. Gulledge, had no personal knowledge, placed in evidence as Appellants' Exhibit "A", and the written statement of the witness Woods signed by him at some time prior to the hearing, being their Exhibit "B"—offered and admitted in evidence, were of no probative value.

The only remaining issue is: Can a Commissioner who was not present at oral argument before the full Commission participate in the subsequent decision of a case so argued.

The appellants did not raise the issue at the hearing that only those Commissioners present could participate in the decision.

When this case was orally argued before this Court, and without objection of counsel for appellants the respondent filed with the record an affidavit of the absent Commissioner in which he stated that before he participated in the decision of the case, he thoroughly familiarized himself with the facts, by reading all of the testimony, and also the briefs filed by counsel representing the respective litigants.

No issue having been made of the absence of this Commissioner when the case was argued, under the authority of *McCoy v. Easley Cotton Mills,* 218 S. C. 353, 62 S. E. (2d) 772, this issue is answered in the affirmative.

All exceptions are overruled, and the judgment of the lower Court affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.