Henry ADAMS et al.

v.

Ruby BRYANT et al.

Court of Appeals of Kentucky.

Petition for Rehearing Overruled, Former Opinion Withdrawn and Redelivered as of Jan. 28, 1955, Affirming.

Craft & Stanfill, Hazard, Elmer Gaines Davis, Jr., Smith, Reed & Leary, Frankfort, for appellants.

French Hawk, Whitesburg, H. C. Bolling and Carl W. Newman, Norton, Va., for appellees.

STEWART, Justice.

Appellees, Ruby Bryant, Rita Jean Bryant, Rosella Faye Bryant, Billy Ray Bryant and Ernest Bryant, Jr., dependents of Ernest Bryant, Sr., filed an application for Adjustment of Claim against appellants, Henry Adams and Gobel Adams, doing business under the name of "Fire Chief Coal Company," alleging their decedent received an injury in the course of his employment on February 14, 1950, which resulted in his death the following day. The referee of the Board found that decedent's injury was not of a traumatic nature. His opinion was sustained on a review by the full Board. On appeal, this decision was reversed by the Letcher Circuit Court and the Board was directed to enter an award for appellees for such sum as they were entitled to receive under the provisions of the Workmen's Compensation Act, KRS 342.001 et seq.

The alleged claim arose out of the following facts: On February 14, 1950, between 2:00 and 2:30 p. m., while four employees, including Ernest Bryant, Sr., were working in appellants' coal mine, a cave-in occurred, trapping Bryant's father-in-law, Worley Dickson, and killing his good friend, Dewey Rose. Bryant and the other employee, Paul Dickson, immediately began efforts to rescue the entombed men. They were assisted by several residents of the locality who responded to a call for aid. Word was sent to the Department of Mines and Minerals, but no one from the Department arrived until several hours later. In the meantime appellants directed the work. The rescue operations continued until 4:30 p. m. the next day. Bryant worked inside and outside the mine without any rest whatsoever. At 2:30 p. m. on Friday, as he was leaving the mine, he collapsed. First aid treatment was given immediately by Dr. Bill Adams and Bryant was then placed in a shack near by where he died at about 8:00 p. m.

Dr. Adams, in the death certificate, listed three possible causes of Bryant's death: "(a) Unknown, possibly acute cardiac failure; (b) Possibly shock from a coal mine accident; (c) Possibly due to old chest pathology." He testified that in his opinion Bryant died of overexertion, exposure and nervous shock, and the referee adopted this conclusion in his report. Nor is this evidence disputed by appellants. Appellees contend this type of cause, resulting in the death of Bryant, brings the case within the application of KRS 342.005(1), which reads as follows:

"* * * It shall affect the liability of the employers subject thereto to their employes for a personal injury sustained by the employe by accident arising out of and in the course of his employment, or for death resulting from such accidental injury; provided, however, that 'personal injury by accident' as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall it include the results of a pre-existing disease * * *."

The Board, in adopting the opinion and order of the referee, was of the view that appellees had failed to prove Bryant's death was the proximate result of "a personal injury sustained by the employe by accident" in accordance with the Board's interpretation of the foregoing subsection. It reserved consideration as to whether Bryant's death arose "out of and in the course of his employment." In reaching its result, the Board relied upon Rue v. Kentucky Stone Co., 313 Ky. 568, 232 S.W. 2d 843; Coleman Mining Co. v. Wicks, 213

Ky. 134, 280 S.W. 936; and Wallins Creek Collieries Co. v. Williams, 211 Ky. 200, 277 S.W. 234. However, a close examination of these cases reveals that in each one a "disease" was involved. KRS 342.005(1) specifically provides that where a "disease" is in the picture, a "traumatic injury" must be shown, and, in view of this fact, the above cases can scarcely be considered authority for the proposition that where no disease is present, a traumatic injury nevertheless is required, such as in the case before us. We must therefore decide whether this provision relates to *all* types of injury and not simply to those of a traumatic nature which is required where a disease pre-exists.

It may be pointed out that many workmen's compensation laws, unlike ours, contain a specific definition of the word injury. See Schneider, Workmen's Compensation Statutes, Vols. 1–4, Alabama to Wyoming, and the material contained therein. It may also be stated that in the majority of those states where the courts have found themselves unrestrained by legislative definition, shock, exertion and fright resulting in injury or death have been held compensable injuries within the meaning of their compensation laws. See Horovitz, Injury and Death Under Workmen's Compensation Laws, pages 72–75. In Am.Jur., Workmen's Compensation, section 194, page 74, the words "injury" and "personal injury," as used in these acts, are defined as "meaning any lesion or *change in the structure of the body, causing harm thereto and a lessened facility of its natural and normal use.*"

The implication to be drawn from the definition just mentioned is that the word injury, when used without any qualifying words, such as traumatic, is to be given its broadest possible scope. This of course has been done in many forums where compensation has been sought for injury as a result of shock, nervous excitement, exposure and overexertion. In Klein v. Len H. Darling Co., 217 Mich. 485, 187 N.W. 400, 401, the deceased dropped a radiator through a hole in the floor and it struck a fellow employee. The deceased suffered shock. His condition became worse and he died two weeks later. It was held that shock in this instance was an "accidental injury." In Guay v. Brown Co., 83 N.H. 392, 142 A. 697, 699, 60 A.L.R. 1284, the deceased overexerted himself, collapsed and died. The court, in deciding he suffered a compensable injury, said:

"As stated in some of the cases, it is no less an accident when a man suddenly breaks down than when there is a like mishap to the machine he is operating. Nor is it a defense that the workman had some predisposing physical weakness, but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment."

Also see Stier v. City of Derby, 119 Conn. 44, 174 A. 332, 333, where overexertion and excitement caused death and it was held compensable; Nicholson v. Roundup Coal Mining Co., 79 Mont. 358, 257 P. 270, where a miner died of shock as result of change of temperature and it was held compensable; and Burlington Mills Corp. v. Hagood, 177 Va. 204, 13 S.E.2d 291, where an employee suffered shock when a short circuit produced a sudden flash and it was held compensable.

It is the general as well as the Kentucky rule that workmen's compensation acts are to be given a liberal construction and any doubts are to be resolved in favor of the employee. See 58 Am.Jur., supra, section 192, page 703; Hinkle v. Allen-Codell Co., 298 Ky. 102, 182 S.W.2d 20. With this principle in mind, we are persuaded that the Legislature did not intend to limit injuries in the absence of a disease to only those injuries of a traumatic nature. Furthermore, in view of the authorities heretofore cited, we conclude that shock, overexertion and exposure are personal injuries within the meaning of KRS 342.005(1).

Being of the opinion that the deceased died as a result of a personal injury, we must determine whether such injury was accidental. The Board decided it was not, citing the case of Wallins Creek Collieries Co. v. Williams, 211 Ky. 200, 277 S.W. 234, 235 as an authority for this position. There one Williams was assisting a blacksmith in shoeing a wild mule. Both parties who engaged in this task perspired freely and exerted themselves extensively. Immediately afterwards, Williams complained of being sick and died that night of a heart attack, according to the medical proof introduced. It was the decision of the Board and of the circuit court that Williams' death was attributable solely to a pre-existing disease. On the appeal in this Court we said:

"It is exceedingly doubtful if what happened to the employee, Williams, in this case could be classified as an accident, it being our opinion that it could not; but, without determining that question (it not being necessary), it was certainly not a traumatic accident so as to permit the apportioning of the compensation and allowing an award for whatever was produced by it."

■■ The language as to whether the accident was to any extent of a traumatic nature, by the Court's own admission, is nothing more than loose dictum and cannot be binding upon us here. Other expressions by this Court seem far more helpful. We have generally defined the word "accident" as something "unusual, unexpected, and undesigned * * * traceable to a definite time, place, and cause". Great Atlantic & Pacific Tea Co. v. Sexton, 242 Ky. 266, 46 S.W.2d 87, 88. And we find our use of the word is in full accord with its generally accepted meaning in almost every other jurisdiction. See 4 Schneider, supra, pages 377 et seq.; Horovitz, supra, pages 84 et seq.; 58 Am.Jur., supra, section 96, page 705.

Is it possible to bring "shock, overexertion and exposure" within the meaning of the word "accident"? We believe this Court has done so in at least one case. In Coleman Mining Co. v. Wicks, 213 Ky. 134, 280 S.W. 936, we upheld the finding of the Board that the deceased suffered an injury from a ruptured blood vessel, brought about by overexertion and strain. If the injury in question was a ruptured blood vessel, as was admitted, then the accident that undoubtedly produced it must have been overexertion and strain. Other courts have held definitely that injury or death as a result of shock, overexertion and strain is an "accident." See Horovitz, supra, page 91; Strode v. Donahue's Fifth Avenue Store, 127 Pa.Super. 231, 193 A. 86; Langford v. Republic Steel Corp., 258 App.Div. 1015, 16 N.Y.S.2d 941; Stier v. City of Derby, supra; Nicholson v. Roundup Coal Mining Co., supra; Burlington Mills Corp. v. Hagood, supra; and Klein v. Len H. Darling Co., supra.

We are persuaded by the authorities to which we have just referred that the injury suffered by the deceased in this case falls within the meaning we have ascribed to the word "accident," at least to the extent that it was unexpected and unforeseen.

■■ However, under our rule we must go one step further. The accident must be traceable to a definite time and place. How stringent is this test? We have written that only a limited and identifiable period need be shown. See Coburn v. North American Refractories Co., 295 Ky. 566, 174 S.W.2d 757. It is undisputed that the injury suffered by deceased was inflicted between 2:30 p. m. Thursday, February 14, 1950, and 2:30 p. m. Friday, February 15, 1950. Is this not a limited and identifiable period? We think it is. Nor is there any question that the place of injury is adequately established. Furthermore, we subscribe to the view that the better rule does not require a showing that the injury must result from a single and specific occurrence in order to pin down the cause of it. See 58 Am.Jur., supra, section 197, page 706; 71 C.J., Workmen's Compensation, section 329, pages 572 et seq. Here, the deceased suffered shock,

overexertion and exposure from the tasks he performed both inside and outside appellant's mine during the rescue operations. As a consequence, he died shortly thereafter. Surely these facts are sufficient to bring decedent's injury within the term "accident" as we define it. Our conclusion is that the deceased suffered an injury from an accident within the meaning of the subsection above quoted.

◼ We now come to a consideration as to whether the injury "arose out of and in the course of" the employment. The Board did not reach this proposition, since it found against appellees on the points we have heretofore discussed. Again we are plagued by the unusual nature of this case, because none like it has been presented to this Court.

At the time the cave-in occurred, on Thursday, February 14th, deceased was engaged in his regular duties at appellant's mine, along with three other fellow-workers, including his father-in-law. The evidence is to the effect that the deceased and Paul Dickson, both of whom escaped the cave-in, immediately notified other people of the mishap and started doing everything possible with the means at hand to rescue the trapped men. The fall occurred about one and one-half or two hours before regular working hours ended. The operation was directed by appellants, the employers, until the Mine and Minerals Department supervisors arrived several hours later. All those who answered the call for volunteers did so gratuitously. The work was carried on in shifts until 4:30 the next day. Deceased, obviously concerned about his father-in-law and friend, worked without rest until he collapsed at 2:30 on Friday.

Appellants maintain that deceased assumed this Herculean task purely and simply to satisfy his own desire to rescue his father-in-law and friend and that he cannot be said to have been performing duties arising out of or in the course of his employment.

In a majority of jurisdictions which have passed on the question of whether rescuing fellow employees from dangers in emergencies comes within the scope of employment, compensation has been allowed. This is also true where the employee is giving assistance to third persons. See 7 Schneider, supra, sections 1651 and 1652; Horovitz, supra, page 117. Also see Meaney v. Keating, 200 Misc. 308, 102 N.Y.S.2d 514; Malphrus v. State Comm. of Forestry, 221 S.C. 75, 69 S.E.2d 70. This rule seems even more just where the employer has knowledge of the employee's voluntary act, and in such cases in other forums in all respects similar to the one we are considering compensation was allowed. See Payne v. Industrial Acc. Comm., 84 Cal.App. 657, 258 P. 620; Klumpp v. Industrial Acc. Comm., 107 Cal.App. 733, 291 P. 456; Snear v. Eiserloh, La.App., 144 So. 265; Miner v. Franklin County Tel. Co., 83 Vt. 311, 75 A. 653, 26 L.R.A.,N.S., 1195.

The cases mentioned have what we think is a sound basis, resting upon both economic and humanitarian principles. Appellants argue that such decisions cannot be sustained where, as in the case at bar, an employee engaging voluntarily in an emergency does not act in his employer's interest. But whether the employee enters upon such an undertaking for himself or not, we believe that he can hardly be said not to have benefited his employer. After all, when accidents occur on the employer's premises, he is likely to be liable either in common law actions for negligence or for a claim under the compensation laws. To argue that it is not in the employer's interest to have his employees rescued from potential injury or death as quickly as possible is, we think, fallacious. The language used in the case of Waters v. William J. Taylor Co., 218 N.Y. 248, 112 N.E. 727, 728, L.R.A. 1917A, 347, probably best expresses our feelings upon the matter under discussion. There it was said:

"And certainly it would be a narrow and disappointing view if in judging the conduct of a workman under the remedial provisions of the Workmen's Compensation Act we should hold that the Legislature intended to deprive him

of the benefits of that act because in going to the rescue of another workman under such circumstances as arose here he has stepped somewhat beyond the limits which would fix the scope of his employment under ordinary circumstances. That act is framed on broad principles for the protection of the workman. Relief under it, generally speaking, is not based on the negligence of the employer, or limited to the absence of negligence on the part of the employé. It rests on the economic and humanitarian principles that compensation should be given at the expense of the business to the employé or his representatives for earning capacity destroyed by an accident in the course of or connected with his work, and this not only for his own benefit, but for the benefit of the state, which otherwise might be charged with his support. This purpose ought not to be defeated by placing too narrow a limit upon the nature of the acts which will be regarded as pertaining to his employment."

Also see Puttkammer v. Industrial Comm., 371 Ill. 497, 21 N.E.2d 575, and the cases cited therein.

We therefore can arrive at no other conclusion but that the deceased died as a result of accidental injuries arising out of and in the course of his employment.

Wherefore, the judgment is affirmed.

SIMS, Judge (dissenting).

I cannot agree with the result reached by the majority of the Court, and since this is a close case, I feel constrained to dissent.

As the opinion is well written and discusses many authorities and all angles of the case, I do not feel called upon to review the facts or the authorities, but will be content with saying that in my judgment the result reached is erroneous.

The reasons for this dissent are apparent to one reading the majority opinion, as to me it is clear the facts do not show deceased suffered an accident. Nor do they show a trauma. To my mind the facts establish the death of Bryant was due to natural causes.

For the reasons given, I respectfully dissent.