**Theodore H. KARGER, Appellant,**

v.

**W. M. CISSELL MANUFACTURING CO.**
**et al., Appellees.**

Court of Appeals of Kentucky.

March 8, 1957.

F. L. Pearl, Louisville, for appellant.

Peter, Heyburn & Marshall, Louisville, Hal O. Williams, Asst. Atty. Gen., for appellees.

SIMS, Judge.

This appeal is from a judgment of the Jefferson Circuit Court, Common Pleas Branch, Fifth Division, which upheld the finding of the Workmen's Compensation Board (hereinafter referred to as the Board) disallowing a claim of appellant, Theodore H. Karger, for compensation because the evidence did not show his condition was the result of traumatic injury caused by an accident sustained in the course and scope of his employment. The referee of the Board denied compensation to Karger and the full Board on review upheld the referee.

■ The only question before us is whether the record shows there is evi-dence of substance to support the Board's finding. The established rule is that if there is competent evidence of probative value to support the finding of the Board, the courts will not disturb it. Humble v. Liggett & Myers Tobacco Co., Ky., 239 S.W.2d 469.

The Company makes and assembles machinery used in the cleaning and pressing business. Karger was 43 years of age when he filed his claim, has a sixth grade education and started working for the Company in February 1952. It was stipulated that both he and the Company had accepted the provisions of the Workmen's Compensation Act, KRS 342.001 et seq. and his average wage was $58 a week

■ The proof shows that between 10:30 and 11:00 A.M., on April 9, 1953, while he was using a pair of pliers in "opening up" some springs on a "cuff-brush" machine Karger's right hand began to swell. There was no accident and no traumatic injury to his hand, which "just started swelling." Karger showed his hand to a fellow-workman, Nubart Sloan, who testified, "it was swelling all the time." That morning Karger showed his hand to his foreman, Raymond Shaeffer, who remarked, "Looks like a spider bit you or something."

Karger worked through that day and the next morning he again showed his hand to Shaeffer, who then sent him to Dr. William Bizot, the company's physician. The doctor put some salve on the hand and sent Karger back to work. The hand did not improve and Karger returned to Dr. Bizot, who had him take daily "whirlpool and putty treatments" in the Kosair's "Curative Workshop" for some time. These treatments accomplished but little and Karger took his vacation the first or second week in May.

Upon returning from his vacation Karger resumed work but his hand started swelling again and he went back to Dr. Bizot, who

sent him to Dr. Alvin Ortner, who specializes in diseases of the blood vessels. Upon examining the patient the doctor found no edema (swelling) in either hand, but both hands were perspiring profusely, the right hand slightly more than the left. Dr. Ortner diagnosed the patient's trouble as "mild vasomotor disturbances of unknown origin". Dr. Bizot did not testify.

Dr. Kenton D. Leatherman examined Karger on May 27 and again on July 20, 1953. The doctor diagnosed the patient's trouble as "bursitis with an associated soft tissue inflammatory condition involving the right hand which was consistent with an injury."

Dr. Stanley E. Smith was Karger's family physician. He examined Karger first on June 15, 1953 and about six times thereafter, the last time being on August 18, 1953, when he found some swelling between the thumb and forefinger on the right hand and some sweating in both hands. Dr. Smith diagnosed the case as "(my) impression (is he has) some circulatory disturbance involving the blood vessels of both hands with sweating, probably due to an injury at work."

It is apparent from the medical testimony that none of the doctors was able to accurately and with certainty diagnose Karger's trouble. However, none of them said it was caused by a trauma. Dr. Leatherman testified Karger's condition was "consistent with an injury"; and Dr. Smith "had the impression" his condition was probably due to an injury. This lacks much of showing Karger's condition was the result of a traumatic injury, especially when there is no evidence in the record that Karger suffered a traumatic injury from an accident in the course and scope of his employment.

It is provided in KRS 342.005 that personal injury by accident shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident. The case at bar is quite similar to Hillerich & Bradsby Co. v. Park-er, Ky., 267 S.W.2d 746, where a woman operating a sanding machine in making gunstocks developed a ganglion cyst on the back of her right wrist. She failed to connect her disability with any particular injury at any definite time and we upheld the Board in refusing to allow her compensation.

In appellant's brief he insists the Board misconstrued the meaning of KRS 342.005 as interpreted by this court in Old King Mining Co. v. Mullins, Ky., 252 S.W.2d 871. He is wrong, the Board did not misconstrue our interpretation of the statute. There, Mullins suffered an accident by striking his head against the roof of a tunnel and we held his pre-existing neurosis was compensable to the extent that it was aggravated by his accidental traumatic injury. In the instant case there was no accident nor was there any traumatic injury to aggravate any pre-existing disease appellant may have had.

An examination of all cases relied upon by appellant shows the claimant in each experienced an accident and resultant traumatic injury. In Greathouse Co. v. Yenowine, 302 Ky. 159, 193 S.W.2d 758, claimant was injured while lifting a heavy metal beam. In Tafel Electric Co. v. Scherle, 295 Ky. 99, 173 S.W.2d 810, the claimant strained a muscle while lifting a heavy stove. In Turner, Day & Woolworth Handle Co. v. Morris, 267 Ky. 217, 101 S.W.2d 921, a belt slipped off and injured claimant's hand. In Adams v. Bryant, Ky., 274 S.W.2d 791, death resulted from overexertion, exposure and nervous shock immediately after the employee had engaged in a rescue he attempted of a relative in a mine disaster. The author of this opinion dissented, but the majority of the court held death was the result of an accident within the meaning of the Workmen's Compensation Act.

We are in accord with the learned trial judge, who in his well reasoned opinion said, "If the Board should have made an

award to the plaintiff, I am of the opinion that the proof would have been insufficient to sustain the finding."

The judgment is affirmed.